# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

```
_____
                                   )
TOSHIA COOPER,                     )
                                   )
                Plaintiff,         )
                                   )
        v.                         )    Civil Action No. 17-10 (ABJ)
                                   )
KIRSTJEN NIELSEN,¹                 )
                                   )
                Defendant.         )
_____)
```

**MEMORANDUM OPINION AND ORDER**

Plaintiff, appearing *pro se*, has sued her former employer, the Federal Emergency Management Agency (FEMA), under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et. seq.* She alleges race discrimination, retaliation, hostile work environment, harassment and wrongful termination.

Defendant has moved pursuant to Federal Rule of Civil Procedure 12(b)(6) for partial dismissal of the complaint based on plaintiff's failure to exhaust her administrative remedies on the retaliation claim. Partial Mot. to Dismiss Pl.'s Compl. [Dkt. # 15]. In addition, defendant seeks dismissal of plaintiff's race discrimination and hostile work environment claims to the extent that they are based on conduct that does not rise to level of an adverse employment action. Plaintiff admits that the retaliation claim was not raised at the administrative level, and the Court agrees that certain claims should be dismissed. So the motion will be granted for the reasons explained more fully below.

---

1  Substituted pursuant to Fed. R. Civ. P. 25(d).

**BACKGROUND**

**1. Plaintiff's Work History**

Plaintiff is an African American woman who worked for FEMA as a GS-7 legal secretary from October 2011 through April 2013. She was assigned to the Office of General Counsel's Mission Support Division and supervised by Ashley Darbo. The gravamen of plaintiff's complaint is that Darbo "harassed, discriminated, retaliated and wrongfully terminated her after she engaged in protected activity twice[.]" Compl. ¶ 4.

The complaint sets out the following facts, which are accepted as true for purposes of this motion. Plaintiff alleges that she complained about Darbo to Darbo's supervisor, Joshua Stanton, on June 5, 2012 and November 28, 2012, and she "consulted with Mr. Doug Goudy, EEOC President," on October 24, 2012 and April 19, 2013. *Id*. Plaintiff told both Stanton and Goudy that she was "being harassed and treated differently than Caucasian employees in the office." *Id*. ¶ 5.

Plaintiff talked to Stanton about Darbo in particular. She told Stanton that Darbo "was cold and distant towards her . . . was unapproachable[,] . . . failed to interact with her, [and] would single her out, which made her feel unwelcomed when she had asked questions concerning her work." *Id*. Stanton informed Darbo's immediate supervisor, Leigh Hoburg, about plaintiff's complaints on June 5, 2012, and Hoburg, in turn, notified Darbo of the complaint that same day by email. *Id*. According to the plaintiff, "after the complaints, . . . Darbo got mad and got even and further mistreated [plaintiff] as she was singled out continuously[.]" *Id*. ¶ 6. Plaintiff lists a number of actions that her supervisor then took against her; the complaint alleges that Darbo:

- told plaintiff that she did not have two 15 minute breaks;
- reduced her lunch break to 30 minutes;

- ordered her to submit a weekly timed work summary;

- used her flexible schedule against her;

- issued a Letter of Reprimand (LOR) for sending an overnight mail request to a judge;

- brought her to tears when instructing her to use her personal sick leave for visiting the FEMA agency nurse;

- "rebelled against excused absence/administrative leave for visiting the FEMA nurse;"

- "adversely withheld []her annual performance rating on April 19, 2013, including a review; and

- finally terminated plaintiff that day on the basis of "poor performance" without producing any performance appraisal identifying deficiencies in her work.

Compl. ¶¶ 6-7. With respect to the events resulting in termination, plaintiff alleges that Darbo "maliciously interfered with [her] work performance numerous times and employment productivity which created a hostile offensive work environment to deliberately withhold her performance evaluation from view." *Id*. ¶ 9. She adds that "all of the Caucasian staff was provided their performance evaluation" while plaintiff's evaluation "was withheld even on the date she was terminated." *Id*. Plaintiff received an annual performance appraisal and formal termination letter on April 23, 2013, when she alleges that she learned for the first time "that she was terminated for reasons of communication, articulation and solution oriented." *Id*. ¶ 11.

### 2. Plaintiff's EEO Activity

The EEOC Final Order attached to the complaint [Dkt. 1-1, ECF pp. 17-21] establishes that plaintiff contacted an EEO Counselor on April 19, 2013, and filed a formal complaint on August 7, 2013. Plaintiff requested a hearing, but the Administrative Judge issued a decision on September 7, 2016 without a hearing, concluding that plaintiff "failed to prove she was discriminated against as alleged." Final Order at 2. The "Claims at Issue" were whether plaintiff

was discriminated against and subjected to a hostile work environment based on race when: (1) she was issued a letter of reprimand on March 7, 2013; (2) her supervisor "did not sit with her to review her performance evaluation [in April 2013], despite sitting with other employees"; (3) her supervisor refused to approve her time sheet on April 9, 2013; and (4) she was removed from federal service on April 19, 2013. Final Order at 2.

The agency issued its Final Order on October 4, 2016, and plaintiff filed this action on January 4, 2017. Plaintiff styles her four claims as follows:

> Count One: Harassment and Retaliation Discrimination in Violation of Title VII, "based on race in whole or in part[.]"
>
> Count Two: Reprisal for Engaging in Protected Activities.
>
> Count Three: Employment Non-Sexual Harassment, based on Darbo's "severe and pervasive" conduct.
>
> Count Four: Hostile and Abusive Working Environment.

Compl. at 6.

## LEGAL STANDARD

"To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the pleaded factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678, citing *Twombly*, 550 U.S. at 556. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*., quoting *Twombly*, 550 U.S. at 556. A pleading must offer more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action," *id*., quoting *Twombly*, 550 U.S. at 555, and "[t]hreadbare

4

recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*, citing *Twombly*, 550 U.S. at 555.

When considering a motion to dismiss under Rule 12(b)(6), the complaint is construed liberally in the plaintiff's favor, and the Court should grant the plaintiff "the benefit of all inferences that can be derived from the facts alleged." *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994). Where the action is brought by a *pro se* plaintiff, a district court has an obligation "to consider [her] filings as a whole before dismissing a complaint," *Schnitzler v. United States*, 761 F.3d 33, 38 (D.C .Cir. 2014), citing *Richardson v. United States*, 193 F.3d 545, 548 (D.C. Cir. 1999), because such complaints are held "to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).

Nevertheless, the Court need not accept inferences drawn by the plaintiff if those inferences are unsupported by facts alleged in the complaint, nor must the Court accept plaintiff's legal conclusions. *See Kowal*, 16 F.3d at 1276; *see also Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). In ruling upon a motion to dismiss for failure to state a claim, a court may ordinarily consider only "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, and matters about which the Court may take judicial notice." *Gustave-Schmidt v. Chao*, 226 F. Supp. 2d 191, 196 (D.D.C. 2002), citing *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624-25 (D.C. Cir. 1997).

## ANALYSIS

The resolution of the instant motion is complicated by the fact that plaintiff has blended multiple legal theories in individual counts, and the fact that the defendant does not specify the particular claims it is moving to dismiss.

A fair reading of the complaint suggests that it is primarily about retaliation, not discrimination; plaintiff introduces the lawsuit by stating, "[t]he plaintiff alleges that her immediate supervisor (named Darbo) harassed, discriminated, retaliated and wrongfully terminated her after she engaged in protected activity . . . ." Compl. ¶ 4.

Paragraph 5 of the complaint explains that plaintiff complained to Darbo's supervisor "that she was being harassed and treated differently than Caucasian employees in the office. The plaintiff fully expressed . . . that Ms. Darbo's demeanor was cold and distant towards her and she was unapproachable. She also informed [the supervisor] that Ms. Darbo didn't interact with her, would single her out, which made her feel unwelcomed when she had asked questions concerning her work." Compl. ¶ 5. Those are the only allegations that relate to the discrimination that led plaintiff to complain in the first place, and they say little that would make out a prima facie case of discrimination based on those allegations alone.

In paragraph 6, plaintiff alleges that "after the complaints, Ms. Darbo got mad and got even and further mistreated her . . . ." She recites a number of actions taken by Darbo, culminating in a bad performance rating and plaintiff's termination.

Count One is entitled "harassment and retaliation discrimination in violation of Title VII," but it states that all of the "intentional conduct as asserted at length herein," which would include the performance review and termination, "constitutes discrimination based on race" in violation of Title VII.

Count Two – "reprisal for engaging in protected activities" – appears to be a retaliation claim in violation of Title VII.

Count Three – "employment non-sexual harassment" – appears to be a hostile work environment claim alleging that plaintiff was subjected to intimidating, hostile and abusive

6

treatment by her supervisor. She does not specify whether it was driven by discriminatory or retaliatory animus, though, nor does she cite Title VII.

Count Four also alleges "hostile and abusive working environment." This claim is based on Title VII, but again, it does not specify if plaintiff is predicating the claim on retaliation or discrimination. With that background, the Court will consider the particular objections raised by the defense.

### I. Claim Exhaustion

Before filing suit, a federal employee must exhaust her administrative remedies through the EEOC's "detailed procedures for the administrative resolution of discrimination complaints, including a series of time limits for seeking informal adjustment of complaints, filing formal charges, and appealing agency decisions to the Commission." *Bowden v. United States*, 106 F.3d 433, 437 (D.C. Cir. 1997) (citations omitted); *accord Payne v. Salazar*, 619 F.3d 56, 65 (D.C. Cir. 2010); *see* 42 U.S.C. § 2000e-16(c) (providing that a plaintiff "may file a civil action" under Title VII within 90 days of receiving notice of final action taken by the agency or a decision by the EEOC on an appeal, or 180 days after filing the initial charge with the agency or an appeal with the EEOC if no action has been taken). "The administrative charge requirement serves the important purposes of giving the charged party notice of the claim and 'narrow[ing] the issues for prompt adjudication and decision.' " *Park v. Howard Univ.*, 71 F.3d 904, 907 (D.C. Cir. 1995), quoting *Laffey v. Northwest Airlines, Inc.*, 567 F.2d 429, 472 n.325 (D.C. Cir. 1976). And a subsequent lawsuit is typically "limited in scope to claims that are 'like or reasonably related to the allegations of the charge and growing out of such allegations.' " *Id.*, quoting *Cheek v. Western & Southern Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994).

Defendant contends that plaintiff failed to exhaust her retaliation claim. Mot. at 6-7. Plaintiff admits that the "administrative review of the EEOC investigation did not include retaliation in the investigative report," but she maintains that the claim "truly existed" and the agency was aware of it, and that the Report of Investigation "exposed the defendants' retaliatory motives." Opp'n at 5. But the claims that were investigated are clearly set out on pages one and two of the agency's Report of Investigation [Dkt. # 15-5], and they do not include retaliation. And plaintiff states that she "became aware of retaliation after the investigative facts were produced in the [Report of Investigation]." Opp'n at 5. Therefore, the unexhausted retaliation claim in Count Two, and that portion of Count One that includes a retaliation claim, will be dismissed under Rule 12(b)(6).

**II. Adverse Employment Decisions**

Defendant contends that the discrimination claim and the hostile work environment claim fail to the extent that they are based on plaintiff's challenge to "her 15-minute breaks, 30-minute lunch breaks, weekly work summaries, and . . . flexible work schedule" because none of those workplace disputes qualifies as an adverse employment action. Mot. at 7-10. But defendant has improperly conflated the elements of the two types of claims. A plaintiff must allege an adverse employment action to make out a discrimination claim. *See Baloch v. Kempthorne*, 550 F.3d 1191, 1196 (D.C. Cir. 2008) ("the two essential elements of a discrimination claim are that (i) the plaintiff suffered an adverse employment action (ii) because of the plaintiff's race . . . ."). And "each incident of discrimination . . . constitutes a separate actionable unlawful employment practice." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002) (internal quotation marks omitted). In contrast, hostile work environment claims "involve[ ] repeated conduct" and "are based on the cumulative effect of individual acts." *Id.* at 115. In pleading a hostile work

environment claim, a plaintiff must allege facts showing that the "workplace [was] permeated with 'discriminatory intimidation, ridicule, and insult' and that this behavior [was] "sufficiently severe or pervasive [as] to alter the conditions of [her] employment and create an abusive working environment." *Harris v. Forklift Sys.*, 510 U.S. 17, 21 (1993), quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65, 67 (1986).

The Court agrees that the alleged restrictions on breaks and work requirements cannot satisfy the adverse action element of a discrimination claim. To be actionable, a workplace event must involve a "tangible employment action," that is, "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998). A plaintiff must show that she "experience[d] materially adverse consequences affecting the terms, conditions, or privileges of employment or future employment opportunities such that a reasonable trier of fact could find objectively tangible harm." *Forkkio v. Powell*, 306 F.3d 1127, 1131 (D.C. Cir. 2002). Courts require a showing of "direct economic harm," *Ellerth*, 524 U.S. at 762, affecting, for instance, an employee's grade or salary. *Taylor v. Small*, 350 F.3d 1286, 1293 (D.C. Cir. 2003).[2] This requirement guards against "judicial micromanagement of

---

[2] The Court recognizes that the standard for what constitutes an adverse action under Title VII's anti-retaliation provision is different than what constitutes an adverse action under the anti-discrimination provision. *Burlington Northern & Santa Fe Ry. Co. v. White,* 548 U.S. 53, 57 (2006); *Steele v. Schafer*, 535 F.3d 689, 695–96 (D.C. Cir. 2008). The "scope of the anti-retaliation provision extends beyond workplace-related or employment-related retaliatory acts and harms," *Burlington N.*, 548 U.S. at 67, and therefore, it does not require a materially adverse change in the terms and conditions of employment. *Steele*, 535 F.3d at 695-96.

The Supreme Court has defined material adversity in the retaliation context as an action that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N.*, 548 U.S. at 68, quoting *Rochon v. Gonzales*, 438 F.3d 1211, 1219 (D.C. Cir. 2006). But the Court need not decide whether the actions described by the plaintiff meet that standard in this case since she did not exhaust her administrative remedies in connection with the retaliation claims.

business practices," *Mungin v. Katten Muchin & Zavis*, 116 F.3d 1549, 1556 (D.C. Cir. 1997), and "frivolous suits over insignificant slights." *Russell v. Principi*, 257 F.3d 815, 818 (D.C. Cir. 2001). Thus, "[w]hile adverse employment actions extend beyond readily quantifiable losses, not everything that makes an employee unhappy is an actionable adverse action." *Id.*

Plaintiff has not pled any facts suggesting that the bulk of the disputes with her supervisor actions affected her in any tangible way. So the discrimination claim in Count One is also dismissed to the extent that it is predicated on such things as restricted breaks, alterations in plaintiff's flexible work schedule, or the mandatory weekly work summaries.

### III. Hostile Work Environment

The Court also finds that plaintiff has failed to state a hostile work environment claim. While defendant sought to dismiss the claims based on a flawed legal theory, it did move to dismiss those claims under Rule 12(b)(6), and, in any event, 28 U.S.C. § 1915(e)(2) requires dismissal "at any time if the court determines" that the complaint fails to state a claim on which relief may be granted.

To determine whether a hostile work environment exists, courts "look to 'all the circumstances,' including the 'frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.' " *Nat'l R.R. Passenger Corp.*, 536 U.S. at 116, quoting *Harris*, 510 U.S. at 23; *see also Baloch*, 550 F.3d at 1201. "Severity and pervasiveness are complementary factors and often go hand-in-hand, but a hostile work environment claim could be satisfied with one or the other." *Brooks v. Grundmann*, 748 F.3d 1273, 1276 (D.C. Cir. 2014). The Supreme Court has made clear that the conduct must be so extreme "to amount to a change in the terms and conditions of employment." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788

(1998). This "ensure[s] that Title VII does not become a general civility code" that would involve the courts in policing "the ordinary tribulations of the workplace." *Id*.

Plaintiff does not allege the sort of severe and pervasive conduct that would support a claim of discrimination based on a hostile work environment theory. Indeed, she does not allege that any racially offensive remarks were made to or about her or were directed towards anyone else. *See Nurriddin v. Goldin*, 382 F. Supp. 2d 79, 108 (D.D.C. 2005), *aff'd sub nom. Nurriddin v. Griffin*, 222 F. App'x 5 (D.C. Cir. 2007). ("When [discriminatory] statements are not made directly to a plaintiff, generally a hostile environment cannot be established."). And to the extent that plaintiff has sought to allege an unlawfully retaliatory work environment, she has not exhausted those claims. Therefore Counts Three and Four of the Complaint will be dismissed without prejudice at this time.

Accordingly, it is **ORDERED** that defendant's Partial Motion to Dismiss Plaintiff's Complaint [Dkt. # 15] is **GRANTED**. But the case will be moving forward in part. In order to clarify matters for the future, plaintiff is **ORDERED** to file a revised version of her complaint by **April 20, 2018**. The revised complaint must eliminate any retaliation allegations, and if plaintiff is alleging discrimination on the basis of race in violation of Title VII in Count One, she must specify the adverse action or actions that she is alleging were discriminatory. If plaintiff seeks to renew the claim in Count Four alleging a racially discriminatory hostile work environment, the complaint must make it clear which facts support that claim.

*[Signature: Amy B Jackson]*

DATE: March 29, 2018

AMY BERMAN JACKSON
United States District Judge